J-S39022-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: B.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.R.P., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 54 MDA 2018 |

Appeal from the Order Entered December 8, 2017
In the Court of Common Pleas of Cumberland County Orphans' Court at
No(s):  91 Adoptions 2017

| | | |
|---|---|---|
| IN THE INTEREST OF: C.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.R.P., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 55 MDA 2018 |

Appeal from the Decree December 8, 2017
In the Court of Common Pleas of Cumberland County Orphans' Court at
No(s):  108-ADOPT-2017

| | | |
|---|---|---|
| IN THE INTEREST OF: C.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.R.P., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 57 MDA 2018 |

Appeal from the Order Entered December 8, 2017
In the Court of Common Pleas of Cumberland County Juvenile Division at
No(s):  CP-21-DP-0000224-2016

| | | |
|---|---|---|
| IN THE INTEREST OF: B.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |

|  | : |  |
|---|---|---|
| | : | |
| | : | |
| APPEAL OF: S.R.P., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 58 MDA 2018 |

Appeal from the Order Entered December 8, 2017
In the Court of Common Pleas of Cumberland County Juvenile Division at
No(s):  CP-21-DP-0000171-2016

BEFORE:  STABILE, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MURRAY, J.:                                    **FILED AUGUST 14, 2018**

In these consolidated appeals, S.R.P. (Mother) appeals from the decrees which involuntarily terminated her parental rights to her daughter, B.W., born May 2011, and to her son, C.W., born November 2016 (collectively, Children). Mother also appeals from the orders that changed Children's permanency goals to adoption.[1]  Additionally, Mother's counsel filed a petition to withdraw and brief pursuant to **Anders v. California**, 386 U.S. (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).  After careful review, we grant counsel's petition to withdraw and affirm.

The orphans' court summarized the factual history of this case as follows:

> Mother has been abusing drugs since long before her children were born.  Both of her parents were heroin addicts.  She has been addicted to heroin and crack cocaine for many years.  She and Father had been together for 8½ years at the time of the

---

[1] Children's father, R.W. (Father), voluntarily relinquished his parental rights to Children.  Father did not appeal that determination, nor is he a party to this appeal.

termination hearing. Mother had been addicted to heroin long before they began dating. She is the one who introduced Father to heroin.

Mother and Father unsuccessfully battled their heroin addiction throughout the time that they were together. During that entire period, up until Mother's incarceration in August of 2016, there was never a month where they were able to stay clean. Mother continued to use heroin and numerous other drugs throughout her pregnancy with B.W. After B.W.'s birth, both parents allowed their addiction to control their lives, leaving the family homeless for large periods of time.

In early August of 2016, Mother was arrested and charged with the sale of heroin resulting in death. She has been incarcerated and/or in treatment for all but five (5) days since that time. At the time of her arrest, she was pregnant with C.W. She continued to use heroin right up until the day of her incarceration. Thereafter, she used methadone.

In December of 2016, Mother was allowed to attend an in-patient drug treatment program where she remained for more than six (6) months. She claims that she "successfully" completed the treatment. However, immediately after leaving rehab, she was given five (5) days of freedom before her scheduled sentencing. She spent those five (5) days with Father, during which time she went right back to using illegal drugs.

Mother received a two-year sentence to the State Intermediate Punishment Program, followed by eight (8) years of supervised probation. She will be eligible for parole to a halfway house in April of 2018. She would not be able to have the children in her custody until June of 2018, at the very earliest.

Orphans' Court Opinion, 3/6/18, at 1-2 (unpaginated) (footnotes omitted).

On September 25, 2017, Cumberland County Children and Youth Services (CYS) filed petitions to change Children's permanency goals from reunification to adoption. Thereafter, on November 27, 2017, CYS filed petitions to terminate Mother's parental rights to Children. The orphans' court

conducted a hearing on both petitions on December 8, 2017. CYS presented the testimony of Shelly Barrick, the case manager assigned to the family; A.S. (Foster Mother), Children's foster parent; and Father. Mother, who was represented by counsel, testified on her own behalf and presented the testimony of Jessica Jones, the current caseworker assigned to the family. Children were represented by a guardian *ad litem* (GAL), Lucille J. Johnston-Walsh, Esquire, and legal counsel, Amy Russo, Esquire.

At the conclusion of the hearing, the court granted the termination petitions pursuant to 23 Pa.C.S.A. § 2511(a)(2), (5), (8) and (b), and granted the petitions to change Children's permanency goal from reunification to adoption.

On January 5, 2018, Mother contemporaneously filed timely notices of appeal and concise statements of matters complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). On April 8, 2018, Mother's counsel filed a petition to withdraw and *Anders* brief in this Court. On June 8, 2018, Mother filed a response to the petition to withdraw, indicating that she did not contest the petition and wished to proceed *pro se*.

Before reaching the merits of Mother's appeal, we must address counsel's petition to withdraw. *See Commonwealth v. Rojas*, 874 A.2d 638, 639 (Pa. Super. 2005) ("When faced with a purported *Anders* brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw.") (quoting *Commonwealth v. Smith*, 700 A.2d 1301, 1303 (Pa. Super. 1997)). This Court extended the *Anders* procedure

- 4 -

to appeals from decrees involuntarily terminating parental rights in *In re V.E.*, 611 A.2d 1267 (Pa. Super. 1992). To withdraw pursuant to *Anders*, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [*Anders*] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

*Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) (citing *Commonwealth v. Lilley*, 978 A.2d 995, 997 (Pa. Super. 2009)). With respect to the third requirement of *Anders*, that counsel inform the appellant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." *Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa. Super. 2005).

Additionally, an *Anders* brief must comply with the following requirements:

(1) provide a summary of the procedural history and facts, with citations to the record;

(2) refer to anything in the record that counsel believes arguably supports the appeal;

(3) set forth counsel's conclusion that the appeal is frivolous; and

(4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of

record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.

In the instant matter, Mother's counsel filed a petition to withdraw, certifying that he reviewed the record and determined that Mother's appeal is frivolous. Counsel also filed a brief, which includes a summary of the history and facts of the case, potential issues that could be raised by Mother, and counsel's assessment of why those issues are frivolous, with citations to relevant legal authority. Counsel provided Mother with a copy of the brief and a letter advising her that she may obtain new counsel or raise additional issues *pro se*. Accordingly, counsel complied substantially with the requirements of *Anders* and *Santiago*. Therefore, we may proceed to review the issues outlined in the *Anders* brief.

Counsel's *Anders* brief raises the following issues for our review:

1. Did the trial court abuse its discretion and commit an error of law when it found that the children's permanent placement goals of reunification were neither appropriate, nor feasible and ordered goal changes to adoption, thus contravening section 6351(f) of the Juvenile Act, 42 Pa.C.S.[A.] § 6351(f)?

2. Did the trial court abuse its discretion and commit an error of law when it found that sufficient grounds existed for a termination of appellants' parental rights in the children, and when it failed to primarily consider the children's developmental, physical and emotional needs and welfare, thus contravening sections 2511(a) and 2511(b) of the Adoption Act, 23 Pa.C.S.[A.] §§ 2511(a) & 2511(b)?

*Anders* Brief at 4 (suggested answers omitted).

- 6 -

Initially, we note that Mother availed herself of her right to file a *pro se* brief raising issues she believes are meritorious.[2]  By filing a *pro se* response, as in this case, or hiring private counsel, Mother has essentially filed an advocate's brief.  It is well-settled that when an advocate's brief has been filed on behalf of the appellant, our Court is limited to examining only those issues raised and developed in the brief.  We do not act as, and are forbidden from acting as, appellant's counsel.  Accordingly, our independent review is logically limited in the situation presented herein.  If we conduct an independent review of the entire record, and conclude that there are no non-frivolous issues to be found anywhere therein, we have rendered the appellant's right to proceed *pro se* or to hire private counsel, meaningless.  ***Cf. Commonwealth v.***

_____

[2] The issues raised in Mother's *pro se* filings are identical to the issues Counsel raised in his ***Anders*** brief.  Specifically, Mother raises the following issues for our review and consideration:

1. Did the trial court abuse its discretion and commit an error of law when it found that the children's permanent placement goals of reunification were neither appropriate, nor feasible and ordered goal changes to adoption, thus contravening section 6351(f) of the Juvenile Act, 42 Pa.C.S.[A.] § 6351(f)?

2. Did the trial court abuse its discretion and commit an error of law when it found that sufficient grounds existed for a termination of appellant's parental rights in the children, and when it failed to primarily consider the children's developmental, physical and emotional needs and welfare, thus contravening sections 2511(a) and 2511(b) of the Adoption Act, 23 Pa.C.S.[A.] §§ 2511(a) & 2511(b)?

Mother's Brief at 4.

***Dempster***, ___ A.3d ___, 2018 WL 2111634, *4 (Pa. Super, 2018) (holding

that this Court, in an ***Anders*** case, must also "conduct a simple review of the

record to ascertain if there appear on its face to be arguably meritorious issues

that counsel, intentionally or not, missed or misstated.").

We first address Mother's claim that the orphans' court erred by

terminating her parental rights.

> [A]ppellate courts must apply an abuse of discretion standard
> when considering a trial court's determination of a petition for
> termination of parental rights. As in dependency cases, our
> standard of review requires an appellate court to accept the
> findings of fact and credibility determinations of the trial court if
> they are supported by the record. ***In re: R.J.T.***, 608 Pa. 9, 9 A.3d
> 1179, 1190 (Pa. 2010). If the factual findings are supported,
> appellate courts review to determine if the trial court made an
> error of law or abused its discretion. ***Id.***; ***R.I.S.***, 36 A.3d 567,
> 572 (Pa. 2011) (plurality opinion). As has been often stated, an
> abuse of discretion does not result merely because the reviewing
> court might have reached a different conclusion. ***Id.***; ***see also***
> ***Samuel Bassett v. Kia Motors America, Inc.***, 613 A.2d 371,
> 34 A.3d 1, 51 (Pa. 2011); ***Christianson v. Ely***, 575 A.2d 647,
> 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be
> reversed for an abuse of discretion only upon demonstration of
> manifest unreasonableness, partiality, prejudice, bias, or ill-will.
> ***Id.***
>
> As [the Pennsylvania Supreme Court] discussed in ***R.J.T.***,
> there are clear reasons for applying an abuse of discretion
> standard of review in these cases. [The Supreme Court] observed
> that, unlike trial courts, appellate courts are not equipped to make
> the fact-specific determinations on a cold record, where the trial
> judges are observing the parties during the relevant hearing and
> often presiding over numerous other hearings regarding the child
> and parents. ***R.J.T.***, 9 A.3d at 1190. Therefore, even where the
> facts could support an opposite result, as is often the case in
> dependency and termination cases, an appellate court must resist
> the urge to second guess the trial court and impose its own
> credibility determinations and judgment; instead we must defer
> to the trial judges so long as the factual findings are supported by

- 8 -

the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. ***In re Adoption of Atencio***, 539 Pa. 161, 650 A.2d 1064, 1066 (Pa. 1994).

***In re Adoption of S.P.***, 47 A.3d 817, 826–27 (Pa. 2012).

The burden is on the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. ***In re R.N.J.***, 985 A.2d 273, 276 (Pa. Super. 2009). Moreover, we have explained that the standard of clear and convincing evidence is defined as "testimony that is so clear, direct, weighty and convincing" as to enable the fact-finder to come to a clear conviction, "without hesitance, of the truth of the precise facts in issue." ***Id.*** (quoting ***In re J.L.C.***, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

***In re L.M.***, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

The orphans' court terminated Mother's parental rights pursuant to Section 2511(a)(2), (5), (8) and (b). This Court need only agree with the orphans' court's decision as to any one subsection of Section 2511(a), as well as Section 2511(b), to affirm the termination. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Accordingly, we focus our analysis on Section 2511(a)(2) and (b), which provides:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . .
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2) and (b).

To satisfy the requirements of Section 2511(a)(2), the moving party must produce clear and convincing evidence that the following three

- 10 -

conditions are met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. *In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003); 23 Pa.C.S.A. § 2511(a)(2). The grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002).

Parents have an "affirmative duty" to work toward the return of their children. *See In re Julissa O.*, 746 A.2d 1137, 1141 (Pa. Super. 2000) (citations omitted). "This 'affirmative duty,' at minimum, requires a showing by the parent of a willingness to cooperate . . . to obtain the rehabilitative services necessary for the performance of parental duties and responsibilities." *Id.* (citation omitted).

Mother has been incarcerated throughout Children's dependency. Our Supreme Court addressed the relevance of incarceration in termination decisions under Section 2511(a)(2) as follows:

> [I]ncarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration

- 11 -

has caused the child to be without essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied.

*In re Adoption of S.P.*, 47 A.3d at 829. After revisiting its decision in *In re: R.I.S.*, 36 A.3d 567 (Pa. 2011), regarding incarcerated parents, our Supreme Court further stated:

[W]e now definitively hold that incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing "essential parental care, control or subsistence" and the length of the remaining confinement can be considered as highly relevant to whether "the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent," sufficient to provide grounds for termination pursuant to 23 Pa.C.S. § 2511(a)(2). *See e.g. Adoption of J.J.*, 515 A.2d [883,] 891 [(Pa. 1986)] ("[A] parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties."); [*In re:*] *E.A.P.*, 944 A.2d [79,] 85 [(Pa. Super. 2008)] (holding termination under § 2511(a)(2) supported by mother's repeated incarcerations and failure to be present for child, which caused child to be without essential care and subsistence for most of her life and which cannot be remedied despite mother's compliance with various prison programs). If a court finds grounds for termination under subsection (a)(2), a court must determine whether termination is in the best interests of the child, considering the developmental, physical, and emotional needs and welfare of the child pursuant to § 2511(b). In this regard, [orphans'] courts must carefully review the individual circumstances for every child to determine, *inter alia*, how a parent's incarceration will factor into an assessment of the child's best interest.

*In re Adoption of S.P.*, 47 A.3d at 830-31.

Mother argues that the court erred in terminating her parental rights under Section 2511(a)(2) because she participated in self-help programs, maintained regular contact with B.W., and completed substance abuse

- 12 -

treatment. Mother's Brief at 17. Mother avers that "[s]he just need[s] a few more months to complete her prison sentence" in order to be reunited with Children and resume her parenting responsibilities. *Id.*

In granting CYS's petitions for involuntary termination, the orphans' court acknowledged that Mother's incarceration impaired her ability to parent Children, but noted that Mother's "long and continued" use of illegal drugs ultimately supported the termination of her parental rights. The court explained:

> . . . The record shows that the birth of B.W. did not give Mother cause to stop using illegal drugs. Instead, she allowed her and Father's drug use to render them homeless throughout much of B.W.'s life. In addition, B.W. was exposed to numerous addicts and a variety of illegal drugs as a result of being in an environment in which both parents and maternal grandparents were drug abusers. Nor did Mother's pregnancy with C.W. cause her to cease using heroin. In fact, we know that she chose to continue her illicit drug use during his gestation because C.W. was born with an addiction to opiates and suffered symptomatic withdrawal.
>
> Since Mother's incarceration in August of 2016, she had a total of five (5) days of freedom. The days were intended for her to spend time with family. Instead, she spent those days using drugs with Father in a homeless shelter. We find it important to note that she made that choice after having been incarcerated for months, birthing an opiate-addicted child, and "successfully" completing a drug rehabilitation program.

Orphans' Court Opinion, 3/6/18, at 5 (unpaginated).

Our review of the record supports the orphans' court's disposition. Following Children's adjudication, Mother was directed to complete the following objectives before Children would be returned to her care: refrain

from using drugs and alcohol, cooperate with CYS, obtain stable housing, and visit with Children.

Although Mother completed a drug treatment program, she failed to achieve sobriety. Shelly Barrick, the case manager assigned to the family, testified that CYS initially became aware of the family in August 2016 after it was reported that Father had relapsed with heroin and Mother was being arrested on a drug charge.[3]  N.T., 12/8/17, at 8.  Mother was incarcerated from August 2016 until December 2016 when she was released to Vantage House, a drug treatment facility. *Id.* at 10.  Although Mother "completed" her treatment at Vantage House, immediately upon her release from the treatment center, Mother resumed using illegal drugs with Father. *Id.* at 57.

Mother was also unable to refrain from using drugs during both of her pregnancies. *Id.* at 54.  Although B.W. was born without any medical complications, C.W. was born addicted to opiates and required a month's long hospital stay to withdraw from the drugs Mother used during her pregnancy. *Id.* at 13, 18, 33, 36-37.

Most tellingly, at the termination hearing, Father testified regarding his concerns with Mother's substance abuse:

[Father]: . . . I know her background really well and her family, and she comes from a family of addicts.  She's an addict.  I'm an

---

[3] In May 2011, CYS received a report alleging that Mother was abusing drugs in the presence of B.W.  N.T., 12/8/17, at 32.  However, because the family relocated to Florida, CYS closed its investigation. *Id.*

addict, too, you know what I mean, and I've struggled, and like I've struggled with this question a lot.

Like I have had a chance, and she hasn't had a chance.  Like part of me says she deserves a chance and then I thought about it.  These are my children.  I don't want to gamble with my children.

Like the odds of [Mother] relapsing just like any addict, are great, way greater than [Foster Parents] trying heroin for the first time or trying any drug for the first time.

N.T., 12/8/17, at 52-53.

Likewise, Mother has been unable to obtain stable housing.  Throughout Children's dependency, Mother has either been incarcerated or resided at a treatment facility.  N.T., 12/8/17, at 9.  Ms. Barrick testified that Mother will continue to be incarcerated for another four to six months, after which she will be released to a halfway house where she will reside for another two months.  *Id.* at 28-29.  Ms. Barrick noted that the halfway house does not permit children.  *Id.* at 30.

Thus, the record confirms that Mother is incapable of parenting Children, and that she cannot, or will not, remedy her parental incapacity.  Mother failed to comply with her permanency plan goals, and she is in no position to provide the permanence and stability the Children require.  As this Court has stated, "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities.  The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claim of progress and hope for the future."  *In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa. Super. 2006).

Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs. . . . This Court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future. Indeed, we work under statutory and case law that contemplates only a short period of time, to wit eighteen (18) months, in which to complete the process of either reunification or adoption for a child who has been placed in foster care. . . . [A] parent desiring to retain parental rights must exert himself to take and maintain a place of importance in his child's life.

*In re E.A.P.*, 944 A.2d 79, 83 (Pa. Super. 2008) (internal citations omitted).

We therefore find no error or abuse of discretion in the orphans' court's decision to terminate Mother's parental rights to Children pursuant to 23 Pa.C.S.A. § 2511(a)(2).

We next consider whether the orphans' court abused its discretion by terminating Mother's parental rights pursuant to Section 2511(b).

Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing

- 16 -

>parent-child bond can be severed without detrimental
>effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011)) (quotation marks and citations omitted).

The orphans' court concluded that it was in Children's best interests to terminate Mother's parental rights and allow Foster Parents to adopt them. Specifically, the orphans' court noted that Children reside together in the home of their foster parents who love them. The orphans' court concluded that no evidence was presented to demonstrate that Foster Parents do not meet the needs and welfare of Children or that severing the relationship between Mother and Children would cause them irreparable harm.

Foster Mother testified that C.W. has resided with her since he was released from the hospital after his birth. Foster Mother explained that during the month C.W. was hospitalized, she would visit him at the hospital and "hold him, you know, rock him, learn about his treatment." N.T., 12/8/17, at 37. Since coming into her home, Foster Mother described C.W. as "doing very well. He's a very happy baby. He is extremely active. He is all over the place, very curious, fun-loving. He doing really, really well." *Id.* at 36. Foster Parents are the only parents C.W. has ever know and he is thriving in their care.

Foster Mother testified that B.W was placed in her home in August 2017. B.W. had previously resided with her maternal aunt, however, due to B.W.'s

behavioral issues and maternal aunt's unwillingness to become a permanent placement resource, B.W. was moved into Foster Parents' care. N.T., 12/8/17, at 38. Foster Mother testified that B.W. has made substantial progress since coming into her care. Foster Mother described B.W. as "settled" and "happy" in her care. *Id.* Moreover, Foster Mother indicated that B.W.'s behavioral issues have substantially diminished. Foster Mother also noted that B.W. does not ask about her Mother. Moreover, Foster Mother indicated that after having contact with Mother, B.W. wets herself and displays aggressive behavior. *Id.* at 41-42.

The record reflects that the orphans' court appropriately considered the Children's best interests and conducted a bond-effect analysis in deciding whether to terminate the parental rights of Mother. Accordingly, we find that the competent evidence of record supports the credibility and weight assessments of the orphans' court. *In re Adoption of S.P.*, 47 A.3d at 826–27. The evidence supports the orphans' court's termination of Mother's parental rights to Children under section 2511(b). Thus, we conclude that the orphans' court did not abuse its discretion in terminating Mother's parental rights under 23 Pa.C.S.A. § 2511(a)(2) and (b).

Finally, we consider whether the orphans' court abused its discretion when it changed Children's permanency goal from reunification to adoption. Our standard of review is well-settled:

[T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

***In re R.J.T.***, 9 A.3d 1179, 1190 (Pa. 2010).

Pursuant to [42 Pa.C.S.A.] § 6351(f) of the Juvenile Act, when considering a petition for a goal change for a dependent child, the juvenile court is to consider, *inter alia:* (1) the continuing necessity for and appropriateness of the placement; (2) the extent of compliance with the family service plan; (3) the extent of progress made towards alleviating the circumstances which necessitated the original placement; (4) the appropriateness and feasibility of the current placement goal for the children; (5) a likely date by which the goal for the child might be achieved; (6) the child's safety; and (7) whether the child has been in placement for at least fifteen of the last twenty-two months. The best interests of the child, and not the interests of the parent, must guide the trial court. As this Court has held, a child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting.

***In re A.B.***, 19 A.3d 1084, 1088-89 (Pa. Super. 2011) (citations and quotation marks omitted). However, we are mindful that "[w]hen the [orphans'] court's findings are supported by competent evidence of record, we will affirm 'even if the record could also support an opposite result.'" ***In re N.C.***, 909 A.2d 818, 823 (Pa. Super. 2006) (quoting ***In re Adoption of R.J.S.***, 901 A.2d 502, 506 (Pa. Super. 2006)).

In challenging the orphans' court decision to change Children's permanency goals to adoption, Mother presents the same argument she raised in challenging the involuntary termination of her parental rights. Essentially, Mother argues that she has complied with her court-ordered objectives and,

if afforded more time, could be reunited with Children upon her release from the halfway house. Mother's Brief at 14-15. Mother asserts that the orphans' court prematurely changed Children's permanency goals from reunification to adoption. *Id.* at 15.

B.W. was removed from Mother's care in August 2016 and CYS established objectives for Mother, including: refrain from using illegal drugs and alcohol and maintain stable housing. Although Mother has expressed her desire to raise Children upon her release from prison, as discussed above, Mother has not met the essential needs of Children.

Children have adjusted well to living with Foster Parents and have bonded with them. Foster Mother indicated that B.W. experiences anxiety during her interactions with Mother and that B.W. sees a trauma therapist to help deal with her behavioral issues caused by her lack of permanency. Foster Mother testified that a strong bond exists between Children and Foster Parents and that Children are thriving in her care.

Based on the record before us, we conclude that the orphans' court did not abuse its discretion in finding that Children's welfare would be best served by changing their permanency goal from reunification to adoption. As this determination is supported by the record, we may not disturb it on appeal. *See N.C.*, 909 A.2d at 823.

Petition to withdraw granted. Decrees affirmed. Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/14/18